IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER L. JOHNSTON, )
    Plaintiff )
     )
    v. )    2:16-CV-55
     )
COMMISSIONER OF SOCIAL )
SECURITY, )
    Defendant. )

## MEMORANDUM and ORDER

Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF No. 16) will be granted; the defendant's motion (ECF No. 20) will be denied and the decision of the Commissioner will be reversed.

On January 14, 2016, Christopher L. Johnson, by his counsel, filed a complaint pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and 1383(c)(3) for review of the Commissioner's final determination disallowing his claim for a period of disability or for disability insurance benefits and supplemental security income benefits under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and 423 and 1381 cf.

The plaintiff originally filed an application for disability and supplemental security income benefits on June 8, 2009 (R.89). Benefits were denied on October 21, 2009 (R.89). On December 15, 2009, the plaintiff requested a hearing (R.89), and pursuant to that request a hearing was conducted on April 26, 2011 (R.89). In a decision filed on May 26, 2011, an Administrative Law Judge denied benefits (R.86-101). On September 25, 2012, the Appeals Counsel affirmed the prior determination (R.105-107).[1]

On October 29, 2012, the plaintiff filed a second application for benefits (R.202-217). Benefits were denied on February 15, 2013 (R.145-153). On February 27, 2013 the plaintiff requested a hearing (R.154-155) and on May 30, 2014 a hearing was held (R.31-85). In a decision dated August 13, 2014 benefits were again denied (R.13-26) and on August 25, 2014

---

[1] This decision is final for the period up to its rendering.

the plaintiff requested reconsideration (R.5-9). On December 4, 2015, the Appeals Counsel affirmed the prior determination (R.1-2) and the instant complaint was filed on January 14, 2016.

In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she was disabled within the meaning of the Social Security Act..

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999)

Presently before the Court for resolution is a determination of whether or not there is substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled within the meaning of the Act.

At the hearing held on May 30, 2014 (R.31-85), the plaintiff appeared with counsel (R.33), and testified that he was born on June 30, 1959 (R.38); that he earned a GED (R.40); that he last worked in April 2011 as a hot food cook and was fired because of his anger outbursts (R.41-42, 69); that he has not sought employment (R.42) and that he receives food stamps (R.40).

The plaintiff also testified that he suffers from degenerative disc disease and experiences constant severe pain (R.42-46, 65); that he takes medication for his pain (R.45); that he can stand for about an hour, walk about fifty feet, sit for a few minutes and lift five to ten pounds (R.46, 54-57); that he also suffers from a bipolar disorder as well as anxiety, a cognitive disorder and antisocial personality (R.47); that he avoids being around people (R.48); that he has serious anger problems (R.47); that he has decreased interest in things (R.49); that he does not sleep well (R.49); that he has low self-esteem and constant depression (R.50); that his medications make

him tired (R.52); that he has not consumed alcohol in three or four years and has not used cocaine for about ten years (R.61-62) and that he sees a therapist on a weekly basis (R.67).

At the hearing a vocational expert was also called upon to testify (R.68-83). She classified the plaintiff's prior work as light to semiskilled or unskilled (R.71).She was next asked to assume an individual of the plaintiff's age, education and work experience who is capable of performing medium work including lifting up to fifty pounds occasionally and carry ten pounds frequently, and who can stand, walk or sit for about six hours and concluded that such a person could perform the plaintiff's prior work as well as a number of other jobs that exist in the national economy (R.71-73). The witness was next asked to assume the same individual who could only lift twenty pounds occasionally, and concluded that such an individual could perform the plaintiff's prior work as well as other work which exists in the national economy (R.73-74). She was next asked to assume the same limitations except that the person was restricted to lifting ten pounds occasionally and concluded that such an individual could not perform the plaintiff's past work or any other work (R.74-75). She further cautioned that if that individual was off task frequently and had anger outbursts he could not be employed (R.75-76).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. Section 423(d)(3). These provisions are also applied for purposes of establishing a period of disability. 42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

(A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program. While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts. NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d Cir. 1970). Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

The plaintiff was treated at the Sharon Regional Behavioral Health Services between March 17, 2003 and May 10, 2005. His primary goal was to lose his alcohol and cocaine dependence and stay out of jail. Alcohol dependence was diagnosed (R.306-366).

In a report of a neuropsychological evaluation conducted on October 14, 2011 a bipolar and cognitive disorder were noted. It was concluded that because of his age, educational level, psychiatric history, criminal history and lack of work history and skills he would have difficulty securing employment (R.401-405).

Radiology reports from September 4, 2012 through December 28, 2012 revealed mild disc space narrowing at C3-4, C4-5 and C6-7. Degenerative disc disease was diagnosed. Further tests revealed chronic and mild active gastroesophageal reflux disease (R.519-538).

In a report of a vocational and psychological evaluation completed on January 15, 2013 depression and anger are noted. It was also observed that the plaintiff had marked limitations on interacting with others and in understanding instructions. Diagnoses of bipolar disorder, anxiety disorder, alcohol and drug abuse in remission, cognitive disorder and antisocial behavior were made. His prognosis was said to be fair (R.367-379).

The plaintiff was treated at Sharon Regional Hospital between April 14, 2013 and August 17, 2013 for a rib fracture and pain (R.406-504).

The plaintiff was treated at Primary Health Network between October 25, 2012 and October 7, 2013. Degenerative disk disease with pain, and tinnitus were diagnosed. His bipolar disorder was said to have improved (R.539-589).

UPMC Horizon reports for the period from February 4, 2012 through December 20, 2012 disclose cervical disk degenerative disease, right cervical facet arthropathy, and cervical

radiculopathy. The plaintiff was dismissed from the pain clinic for failing a urine test (R.519-538).

The plaintiff received treatment at the Associates in Counseling and Child Guidance from November 13, 2012 and March 6, 2014 for a bipolar and cognitive disorder. The goal was to improve his coping skills. Medication was prescribed but little progress was made (R.390-400, 505-508).

In a physical capacity evaluation completed on March 7, 2014, a diagnosis of chronic back pain was made, and it was reported that the plaintiff could repeatedly lift up to ten pounds, stand or walk for up to four hours and sit for up to six hours. The plaintiff was said to occasionally need additional work breaks (R.509).

Records of treatment rendered by Dr. Ahdy A. Nassif for the period from February 5, 2013 through June 5, 2014 revealed the administration of a cervical nerve block on June 5, 2014, a right sacroiliac joint injection on May 22, 2014 and a suprascapular nerve block on February 26, 2014 (R.510-518, 590-600).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, et seq., set forth an orderly and logical sequential process for evaluating all disability claims. In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity. If not, then the severity of the plaintiff's impairment must be considered. If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability. If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work. If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file. The finding of residual functional capacity is the key to the remainder of findings under the new regulations. If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made. If the facts of the

6

specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in assisting the Administrative Law Judge to properly weigh all relevant medical and vocational facts.

Based on the evidence presented, the Commissioner concluded:

> The claimant meets the insured status requirements of the Social Security Act through September 30, 2016.
>
> The claimant has not engaged in substantial gainful activity since September 26, 2012, the alleged onset date.
>
> The claimant has the following severe impairments: cervical and thoracic spine degenerative disc disease, cognitive disorder, bipolar disorder, anxiety and antisocial personality disorder…
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of [the] listings … In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks…
>
> In activities of daily living, the claimant has mild restrictions…
>
> In social functioning, the claimant has moderate difficulties. The claimant testified to significant difficulty with anger, irritability and getting along with others…Treatment records do not contain evidence of significant problems with interaction or communication, and a primary care physician stated … that the claimant was cooperative with a normal mood and affect… Therapy notes … show the claimant was cooperative and compliant with weekly therapy sessions …
>
> With regard to concentration, persistence or pace, the claimant has moderate difficulties…However, the psychologist also noted the claimant was fully alert and oriented and was able to perform serial seven subtractions … and was capable of managing personal funds without assistance…

As for episodes of decompensation, the claimant has experienced no episodes of decompensation of extended duration…

Because the claimant's mental impairments do not cause at least two "marked" limitations … the "paragraph B" criteria are not satisfied…

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined …

The claimant alleged when he filed for disability that he was unable to work due to depression, short term memory loss, fatigue, bipolar disorder, anxiety, and prior multiple concussions… [I]n a February 2013 disability appeals report the claimant alleged he now experienced arthritis and bulging discs in his neck…

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…

The claimant has a history of neck and back symptoms… a thoracic spine x-ray revealed no fracture or subluxation, and "minimal" narrowing of the mid to lower thoracic spine and "tiny" anterior osteophytes. A cervical spine x-ray showed no subluxation, "mild" narrowing at C3-4 and C4-5, a narrowing with osteophytes at C6-7. The claimant saw a pain management specialist… A physical examination in February 2013 was largely unremarkable…

Pain management records in June 2014 again show a largely unremarkable physical examination, no overt pain behavior, pleasant affect, normal cervical and lumbar range of motion, lumbar tenderness, negative straight leg raising, no weakness and intact sensation and reflexes. The medical record contains no diagnostic imaging tests that confirm any significant lumbar spine problem…

[T]he medical evidence of record is not consistent with an individual who experiences symptoms to the degree alleged by the claimant or whose impairments, either alone or in combination, would preclude him from all work. While the claimant does experience limitations from his mental and physical impairments, these have been accounted for in the residual functional capacity o[f] unskilled, medium work involving only simple, routine and repetitive tasks…

The medical record does not show the claimant has … been prescribed narcotic pain medication on a sustained basis…

Little weight is given to the … opinion of Dr. Julie Uran … this opinion is not consistent with the claimant's testament history, which does not include inpatient psychiatric treatment since the alleged onset date, or emergency room visits for mental symptoms. Furthermore, this opinion is not consistent with psychiatric progress notes which do not contain clinical findings of significant limitations from mental impairments…

Little weight is given to the October 2011 statements of Dr. Renata E. Harland, an examining neuropsychologist that the claimant would likely have difficulty obtaining and maintaining competitive employment… treating therapist records and the observations of the claimant's primary care physician and pain management physician are not consistent with an individual who is disabled. Furthermore, Dr. Hartland apparently based these statements that the claimant would have difficulty findings and keeping work on factors other than the claimant's mental impairments, including his lack of job skills, his education level, his psychiatric history, his lack of substantial work history, his history of involvement in the criminal justice system, and his lack of a vehicle. Dr. Harland is not a vocational expert…

The undersigned gives little weight to the March 2014 opinion of Dr. Glenn Providence … Dr. Providence's opinion was provided on a check-box form and was not accompanied by any clinical or objective findings to support it…

[A]fter reviewing the clinical and objective finds … the undersigned finds the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms but the statements concerning the intensity, duration and limiting effects of the claimant's symptoms are not entirely credible and are inconsistent with the totality of the evidence…

If the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed… However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert responded [to] interrogatories that given all of

> these factors the individual would be able to perform the requirements of representative occupations …
>
> Based on the testimony of the vocation expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers of the national economy. A finding of "not disable" is therefore appropriate… (R.15-25).

The record demonstrates that the plaintiff has both physical and mental issues. While it is more controversial as to whether or not he is disabled as a result of his mental condition, his physical limitations are more problematic. His long-term treating physician, Dr. Providence, concluded that he was only capable of lifting up to ten pounds repeatedly and standing and walking for up to four hours and sitting for up to six hours (R.509). The vocational testimony indicates that an individual of the plaintiff's age, education and work experience who could only lift ten pounds could not be employed (R.74-75). Thus, it was only by assuming that the plaintiff could lift up to fifty pounds, for which there is no evidence, could the conclusion of "not disabled" be reached. Pursuant to the Regulations, petitioner is limited to sedentary work. 20 CFR §404.1567(a). He was also 55 at the time of the hearing and is regarded as a person of advanced age. 20 CFR § 404.1563(f). Thus, a determination of disabled is compelled. 20 CFR, Subpart P. App. 2, Rule 202.04. While credibility determinations are properly made by the Commissioner, <u>Diaz v. Commissioner</u>, 577 F.3d 500, 506 (3d Cir.2009), the Commissioner cannot substitute his own opinion for those of expert. For this reason, the determination is not supported by substantial evidence.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. <u>Chavarriaga v. New Jersey</u>, 806 F.3d 201 (3d Cir. 2015).In the instant case, there are no material factual issues in dispute and the decision of the Commissioner is not supported by substantial evidence. For this reason, the plaintiff's motion for summary judgment will be granted, the defendant's motion for summary judgment will be denied, and the decision of the Commissioner will be reversed.

An appropriate Order will be entered.

Filed: October 11, 2016

s/ Robert C. Mitchell
United States Magistrate Judge

ORDER

AND NOW, this 11th day of October, 2016, for the reasons set forth in the foregoing Memorandum, the plaintiff's Motion for Summary Judgment (ECF No. 16) is GRANTED; the defendant's Motion for Summary Judgment (ECF No. 20) is DENIED and the determination of the Commissioner is reversed.

s/ Robert C. Mitchell
United States Magistrate Judge